UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NURDAN S.,

      Plaintiff,

v.             CASE NO. 6:25-cv-06064
             (JGW)

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 5, 9), as well as Plaintiff's Reply (Doc. 10). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 5) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.  **RELEVANT BACKGROUND**

A.  **Procedural Background**

On August 18, 2021, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of July 15, 2020. (Tr. 68, 213-14.) The application was denied initially on August 2, 2022 and upon

reconsideration on June 15, 2023. (Tr. 90, 102.) Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. 122-23.) On May 8, 2024, following the hearing, ALJ Jason Mastrangelo issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 14-39.) The Appeals Council denied the request for review, (Tr. 1-6), and Plaintiff timely appealed to federal district court.

### B.    Factual Background[1]

Plaintiff was born on August 1, 1971, (Tr. 42), and graduated high school, (Tr. 45). Plaintiff alleged several impairments in support of her disability claim, including anxiety, sleeping disorder, left jugular bulb diverticulum in the brain, headaches, balance, loud noise in ear, short term memory problems, concentration problem, and depression. (Tr. 68.)

Plaintiff testified that, at the time of the hearing, she lived with her husband and adult daughter. (Tr. 45.) She testified regarding her conditions, indicating that her symptoms got worse over time, ultimately resulting in her inability to work. (Tr. 49.)

Plaintiff explained that she experiences pain throughout her body but the worst pain is in her spine, back, and head, which hurts all the time. (*Id.*) She indicated that her shoulder also hurts, along with her upper and lower back. (Tr. 50.) Plaintiff attends physical therapy for her fibromyalgia, shoulder, and spine pain, and she also exercises when she can, but due to her pain, it is difficult. (Tr. 57.) She further described that she constantly has noise in her ear, which makes her "crazy." (Tr. 50.) Plaintiff explained that she experiences headaches every day, and the pressure never stops. (Tr. 57.)

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

2

Plaintiff also noted that she has carpal tunnel, causing pain in her trigger finger and elbow, pain that she has experienced in both hands for years. (Tr. 50, 55.)  She explained that sometimes one hand may hurt more than the other, but one is not consistently worse than the other. (Tr. 51-52.) She wears braces each night.  (Tr. 55.)  Although she has not yet had surgery on her dominant right hand, she has received several injections in both thumbs with relief following for several months thereafter.  (Tr. 50).  She testified that her doctor has directed that surgery on her right hand would be the next step.  (Tr. 51.)

Plaintiff indicated that she has difficulty doing chores and her husband and daughter help her with most things, as making coffee is the only task she can do on her own.  (Tr. 52.) She explained she travels with her husband and daughter to Turkey to visit family and her last trip lasted a little longer than a month.  (*Id.*)  She testified she would not be able to travel without assistance from her family.  (Tr. 53.)  She also explained that she used to manage the bills and finances for her family, but she stopped due to her headaches and inability to concentrate. (Tr. 54.)

Plaintiff testified that she takes medication for her anxiety, which does make her sleepy and dizzy, but which also provides some, although not complete, relief.  (Tr. 52, 54.) She indicated that she felt significant fear regarding most things. (Tr. 54.)

### C.    Medical Opinion Evidence

The record in this case includes nine opinions, including four from agency reviewers, four from consultative examining experts, and two from Plaintiff's treatment providers.  Given the nature of Plaintiff's challenges, a brief summary of the opinions and the ALJ's correlating evaluation, is helpful.

**Physical Impairment Experts**

*Agency Reviewers (Drs. Baronos and Zito)*

State agency medical consultants V. Baronos, MD and G. Zito, MD provided largely consistent opinions, limiting Plaintiff to a light exertional capacity, lifting and carrying up to twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting for six hours out of an eight-hour workday; frequently climbing ramps and stairs; occasionally balancing and stooping; and avoiding concentrated exposure to noise. (*See* Tr. 80-81, 96-97.)

The ALJ found these opinions to be supported by each physician's respective review of the medical record and consistent with the longitudinal medical record which reflected, for example, positional vertigo secondary to Plaintiff's jugular bulb diverticulum. (Tr. 30.) However, the ALJ rejected the reviewers' opinions that Plaintiff could occasionally climb ladders, ropes, and scaffolds, or be limited to only avoiding concentrated exposure to hazards such as moving mechanical parts and unprotected heights, finding such conclusions inconsistent with the objective medical evidence. (*See id.*) (citing Tr. 81-84, 96-97.)  Instead, the ALJ concluded that, due to alleged dizziness, Plaintiff should avoid heights and hazards and climbing ladders, ropes, and scaffolds. (*See id.*) (concluding that, "[o]verall, the totality of the evidence, specifically the tinnitus and balance problems related to jugular bulb diverticulum, warrant greater restrictions on both climbing ladders, ropes and scaffolds and exposure to hazards.")

The ALJ further rejected Dr. Baronos's conclusion that no manipulative limitations were necessary.  (*See id.*; *see also* Tr. 82.)  The ALJ noted that such a conclusion was "not supported by the medical record contained in the file demonstrating mild basal

arthrosis of the left thumb, with slight joint space narrowing and mild osteophytosis." (Tr. 30.) Instead, the ALJ accepted Dr. Zito's conclusions provided on reconsideration, which recognized that Plaintiff's hand and finger dexterity was not intact bilaterally and so fine motor manipulation should be limited to occasionally in both hands. (*See id.*) (citing Tr. 97.) The ALJ found that these conclusions were supported by the medical records and were consistent with the longitudinal medical record, particularly Dr. Toor's examination and analysis of Plaintiff's bilateral hand and wrist dysfunction. (*See* Tr. 31) (citing Tr. 840-42.) The ALJ thus found these opinions persuasive in part.

### Consultative Examining Physicians (Drs. Dantoni and Toor)

Dr. Dantoni opined that Plaintiff "would be mildly limited to bending due to dizziness when bending over." (Tr. 615.) She also identified "potential schedule interruptions due to [Plaintiff's] chronic headaches and tinnitus." (*Id.*) The ALJ found these conclusions to be supported by Dr. Dantoni's examination, which reflected Plaintiff's "positional vertigo secondary to her jugular bulb diverticulum, and back pain secondary to Motrin consumption." (Tr. 29) (citing Tr. 612.) Indeed, Dr. Dantoni observed Plaintiff's dizziness during the examination when bending over and turning her head from side-to-side. (*See* Tr. 613.) The ALJ also noted that Dr. Dantoni's conclusions were consistent with the longitudinal medical record, as well as Plaintiff's history of chronic headaches. (*See* Tr. 29) (internal citations omitted). Based on these opinions, the ALJ concluded that Plaintiff "should have only occasional stooping and no climbing of ladders, ropes, or scaffolds, and no exposure to hazards or heights." (*See id.*) However, the ALJ found Dr. Dantoni's opinion regarding potential schedule interruptions to be "relatively vague with no clear evidence of record to suggest that the claimant would require off task time to preclude

gainful employment." (*See id.*)  Overall, the ALJ found Dr. Dantoni's opinion to be "mostly persuasive."  (*See id.*)

Dr. Harbinder Toor also provided an opinion. (Tr. 840-43.)  In the "Medical Source Statement" of the opinion, Dr. Toor found that Plaintiff "would have moderate limitations performing fine motor activity with her hands." (Tr. 842.) The ALJ noted that this conclusion was supported by Dr. Toor's examination, which identified carpel tunnel syndrome, trigger finger and arthritis in the claimant's bilateral wrists and hands, more marked on the right than on the left."  (Tr. 29) (citing Tr. 840). The ALJ recognized that Dr. Toor noted that Plaintiff wore wrist and hand braces bilaterally, and the physical examination revealed "palmar flexion at 20 degrees, dorsiflexion at 10 degrees, ulnar and radial deviation at 10 degrees with tenderness and slight pain in [Plaintiff's] bilateral wrists." (*See id.*) (citing Tr. 842). Additionally, "Dr. Toor noted full range of motion in [Plaintiff's] forearms and fingers bilaterally, with no joint deformity, subluxations, contractures or ankylosis," and he also "observed no joint heat, redness, or effusion." (*See id.*) (citing Tr. 842).  Further, "[d]eep tendon reflexes were physiologic and equal in her upper extremities" and Plaintiff's "strength was 5/5 in her upper extremities," with "no sensory deficit" upon examination." (*See id.*) (citing Tr. 842). That said, the ALJ recognized that "Dr. Toor did not[e] that [Plaintiff's] hands were tender, stiff, and slightly swollen, and that her hand and finger dexterity was not intact bilaterally," further acknowledging that Plaintiff's "fisting was full, but grip strength was 3/5 bilaterally." (*See id.*) (citing Tr. 842).  Although not expressly detailed in the ALJ's opinion, Dr. Toor also noted that Plaintiff had "moderate difficulty grasping, holding, writing, tying shoelaces, zipping a zipper, buttoning a button, manipulating a coin, or holding objects with the

6

hands." (Tr. 842.)  The ALJ found Dr. Toor's opinion to be "consistent with the longitudinal medical record, evidencing the claimant's bilateral wrist, hand, and thumb dysfunction." (*See* Tr. 29) (internal citations omitted).  He characterized the opinion as "persuasive." (*See id.*)

### *Treating Physician (Dr. Cicilline)*

Dr. Cicilline, Plaintiff's treating physician, "opined that [Plaintiff] can occasionally finger, climb ramps and stairs, but never climb ladders or scaffolds" and "only tolerate quiet (library-like) noise conditions at work and must avoid all exposure to hazards such as moving mechanical parts and unprotected heights." (*See id.*) (citing Tr. 853, 855.) The ALJ found these opinions to be supported by Dr. Cicilline's treatment of Plaintiff for "bilateral wrist, hand, and thumb dysfunction, as well as her condition of tinnitus secondary to jugular bulb diverticulum," and further concluded that these conditions justified restrictions to "fine hand movements, avoidance of balance issues and potentially dangerous conditions at work and are consistent with the longitudinal medical record evidencing these impairments."  (Tr. 30) (internal citations omitted).

However, the ALJ rejected Dr. Cicilline's remaining opinions, noting they would preclude all work, finding that "[w]hile the evidence overall supports significant restrictions such as those contained in the paragraph above, the evidence of record, which includes Dr. Cicilline's treatment notes, do not support the level of functional limitations which she proffers." (*See id.*)  The ALJ specifically noted that "Dr. Cicilline's opinion that the claimant's pain would negatively impact productivity 20-25% on a bad day is not supported by any objective findings or clinical signs," acknowledging that, while Plaintiff "has exhibited some difficulties on examinations, none have reached such a significant

level." (*See id.*)  The ALJ further recognized that, while Plaintiff "does have some limitations with the upper extremities there is no indication that she would be limited to only occasional handling or reaching," specifically noting Plaintiff's normal EMG and lack of evidence of "such significant deficits in strength that the claimant could only occasionally handle or reach." (*See id.*)  The ALJ further noted the lack of evidence to support the "substantially reduced range of motion to support these restrictions." (*See id.*)  The ALJ thus concluded that Dr. Cicilline's opinions were "only persuasive in part to the extent noted above." (*See id.*)

### *Mental Impairment Experts*

### *Agency Reviewers (Drs. Woogen and Juriga)*

State agency psychological consultants M. Woogen, Psy. D. and M. Juriga, Ph. D. both opined that Plaintiff "retained capacity for simple tasks but had moderate limitations regarding her ability to respond to detailed instructions, and was moderately limited in completing complex tasks, sustaining concentration, and maintaining a consistent pace." (*See* Tr. 85-86; 95, 99.)  The ALJ found these opinions to be supported by their review of the medical records and consistent with the longitudinal medical record, which reflect Plaintiff's "chronic headaches interfering with her routine, decreased range and depressed affect, anxiety and panic symptoms with trouble concentrating." (*See* Tr. 31) (internal citations omitted).  Overall, the ALJ found these opinions to be persuasive. (*Id.*)

### *Consultative Examining Physician (Dr. Deneen)*

Consultative examining expert Dr. Todd Deneen, Psy. D "opined that the claimant would have a mild limitation in understanding, remembering, and applying simple directions and instructions, but a moderate limitation with complex directions and

instructions." (*See* Tr. 31; *see also* Tr. 608-09.) The ALJ concluded that this opinion was "supported by Dr. Deneen's examination of the claimant, finding, for example, difficulties caused by cognitive deficits and mood symptoms, such as memory deficits and dysphoric moods." (*See* Tr. 31.) Similarly, the ALJ found that Dr. Deneen's opinion as to Plaintiff's moderate limitations in following complex instructions and tasks to be "consistent with the longitudinal medical record, detailing, for example, the claimant's ability to concentrate within normal limits with normal and intact thought process." (*See id.*) (internal citations omitted). Conversely, the ALJ found that Dr. Deneen's opinion that Plaintiff "would have a moderate limitation in sustaining concentration and performing tasks at a consistent pace [was] not consistent with his own examination," noting that Plaintiff admitted to "dressing and showering on a regular basis, as well as cooking, cleaning, laundering, and shopping for her family on an as needed basis." (*See id.*) The ALJ found this opinion to be "partially persuasive." (Tr. 32.)

### Treating Physician (Licensed Clinical Social Worker (LCSW) Steron)

Robin Steron, LCSW, Plaintiff's treating therapist, also submitted an opinion, opining that Plaintiff would have difficulty in understanding, carrying out and remembering complex instructions, as well as making judgments on complex work-related decisions. (*See* Tr. 860, 862.) Additionally, Counselor Steron concluded that Plaintiff could carry out only simple instructions. (*See* Tr. 862.) The ALJ found these opinions to be supported by Counselor Steron's treatment of Plaintiff "for depressive, anxiety and trauma-related disorders" as well as consistent with the longitudinal medical record of such impairments. (*See* Tr. 31) (internal citations omitted).  He found "limitation to understanding and remembering simple instructions, as well as sustaining attention and concentration to

9

carry out simple tasks" to be necessary in light of this opinion.  (*See id.*) However, the ALJ rejected Counselor Steron's opinion that Plaintiff had a "'marked' limitation in understanding and remembering simple instructions, and in her ability to make judgments on simple work-related decisions."  (*See id.*) The ALJ noted that this portion of the opinion was not supported by Counselor Steron's own treatment notes, reporting Plaintiff's "judgment to be intact, with her ability to concentrate within normal limits." (*See id.*) Ultimately, the ALJ found LCSW's Steron's opinion to be partially persuasive.  (*See id.*)

## D.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 19.)

2.  The claimant has not engaged in substantial gainful activity since July 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).  (Tr. 19.)

3.  The claimant has the following severe impairments: tinnitus due to jugular bulb diverticulum, migraine, osteoarthritis right shoulder, bilateral carpel tunnel syndrome, subtle basal arthrosis left thumb, moderate bilateral basal subluxation hands, polyarthralgia, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD). (20 CFR 404.1520(c)). (Tr. 19.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 20.)

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She occasionally lift and / or carry up to 20 pounds and can frequently lift and / or carry up to 10 pounds. She can stand and / or walk for 6 hours and sit for 6 hours out of an 8-hour workday. She can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs. She can occasionally balance and stoop. She can occasionally engage in fingering bilaterally. She must avoid concentrated exposure to noise. She must avoid all exposure to hazards such as moving mechanical parts and unprotected

heights. She can understand and remember simple instructions. She can sustain attention and concentration to carry out simple tasks and instructions. (Tr. 24.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). (Tr. 32.)

7. The claimant was born on August 1, 1971, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). (Tr. 32.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 32.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 32.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). (Tr. 32.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2020, through the date of this decision (20 CFR 404.1520(g)). (Tr. 34.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence

11

from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

## B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner

12

considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to incorporate certain limitations provided by the medical experts. More specifically, Plaintiff contends that, although the ALJ characterized Dr. Toor's opinion as "persuasive," he failed to incorporate any handling limitations in the RFC, despite Dr. Toor's opinion that Plaintiff is moderately limited in fine motor activity.  (Doc. 5-1 at 20.)  Additionally, Plaintiff argues that the ALJ failed to incorporate various mental limitations opined by Drs. Woogen and Juriga, as well as Counselor Steron, without adequate explanation. (*See id.* at 24.)  Finally, Plaintiff asserts that the ALJ failed to adequately explain his rejection of certain limitations assigned by treating source Dr. Cicilline.  (*See id.* at 29-30.)

As a preliminary matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion

in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). An ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence." *See April W. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00044-MAV, 2024 WL 4804778, *5 (W.D.N.Y. Nov. 14, 2024) (quoting *Demeca P. v. Comm'r of Soc. Sec.*, No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions.[2] *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

---

[2] With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the

## A. The ALJ Properly Evaluated Dr. Toor's Opinion and Incorporated the Relevant Limitations.

Plaintiff contends that the ALJ erred by failing to include any handling limitations in the RFC in light of Dr. Toor's opinion that Plaintiff had moderate limitations doing "fine motor activity." (*See* Doc. 5-1 at 20; *see also* Tr. 842.) While Plaintiff acknowledges the ALJ limited Plaintiff to "occasional fingering," she argues this is insufficient to encapsulate Dr. Toor's opinion, and that a handling limitation was necessary. (*See* Doc. 5-1 at 20.) Defendant argues that "handling" falls within "gross manipulation," rather than "fine manipulation," and is therefore outside the scope of Dr. Toor's opinion. (*See* Doc. 9-1 at 8.)

The regulations note the difference between fine and gross movement. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 1.00(E)(4). "Fine movements" were defined to include "use of your wrists, hands, and fingers; such movements include picking, pinching, manipulating, and fingering," while "gross movement" involved "use of your shoulders, upper arms, forearms, and hands," including "handling, gripping, grasping, holding, turning, and reaching." *See id.* *See also* Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *7 (S.S.A. 1985) (noting that "handling" includes "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands," while "'fingering' involves picking, pinching, or otherwise working primarily with the fingers.").

---

medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

Thus, based on these definitions, the ALJ's limitation to "occasional fingering" accounts for Dr. Toor's opinion that Plaintiff "would have moderate limitations performing fine motor activity with her hands," (*see* Tr. 842), because a fingering limitation is a limitation on fine motor activity.  *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 1.00(E)(4); SSR 85-15, 1985 WL 56857, at *7.

However, Dr. Toor also opined that Plaintiff had "moderate difficulty grasping, holding, writing, tying shoelaces, zipping a zipper, buttoning a button, manipulating a coin, or holding objects with the hands."  (Tr. 842.)  While the latter descriptors used by Dr. Toor reflect fine motor skills, grasping and holding are generally recognized within the definition of "handling."  *See* SSR 85-15, 1985 WL 56857, at *7.  While Dr. Toor did not mention either "grasping" or "holding" within his Medical Source Statement expressly, and the ALJ did not address these limitations when analyzing Dr. Toor's opinion, the Court finds that any error in this omission is harmless because the ALJ addressed the need for any handling limitation in his analysis of Dr. Cicilline's opinion.  (*See* Tr. 30.)

Specifically, Dr. Cicilline opined that Plaintiff should be limited to occasional handling.  (*See* Tr. 853.) The ALJ rejected this limitation, noting that, while Plaintiff "does have some limitations with the upper extremities there is no indication that she would be limited to only occasional handling or reaching," specifically noting Plaintiff's normal EMG and lack of evidence of "such significant deficits in strength that the claimant could only occasionally handle or reach."  (*See* Tr. 30.)  The ALJ further noted the lack of evidence to support the "substantially reduced range of motion to support these restrictions."  (*See id.*)

Thus, when reading the ALJ's decision as a whole, it is clear that the ALJ accepted limitations to Plaintiff's fine motor ability but not to her gross movements. (*See* Tr. 29-30.) An ALJ is permitted to accept or reject portions of medical opinions, even ones he finds persuasive, if not supported by objective evidence. *See April W.*, 2024 WL 4804778, at *5. Accordingly, the Court finds no error in the ALJ's conclusions regarding Plaintiff's manipulative limitations.

### B. The RFC Properly Accounts for Plaintiff's Mental Limitations Supported by Substantial Evidence.

Plaintiff next argues that the ALJ failed to incorporate or explain his failure to incorporate limitations set forth in the opinions of Dr. Woogen, Dr. Juriga, and Counselor Steron. (*See* Doc. 5-1 at 24.) For the reasons set forth below, the Court does not find these arguments meritorious.

#### 1. The RFC's limitation to simple work addressed Plaintiff's mental limitations.

Plaintiff contends that the ALJ failed to adequately incorporate or otherwise explain his failure to include certain moderate mental limitations into the RFC. (*See id.* at 24-25.) Specifically, she notes that Dr. Woogen opined that Plaintiff has moderate limitations in the ability to understand, remember, or apply information and concentrate, persist, or maintain pace. (Doc. 5-1 at 24, 25.) And Dr. Woogen opined that Plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (*Id.*) She also highlights that Dr. Juriga opined that Plaintiff was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods. (*See id.* at 24.) Plaintiff argues that it is unclear how the ALJ incorporated these moderate limitations into the

17

RFC, and that the RFC's limitations to "simple instructions" and "simple tasks" were insufficient to accommodate this limitation.  (*See id.* at 24-25.)

The Court disagrees.  First, as Plaintiff acknowledges, the ALJ included mental limitations in the RFC, providing that "[Plaintiff] can understand and remember simple instructions. She can sustain attention and concentration to carry out simple tasks and instructions."  (Tr. 24.)  Thus, the ALJ incorporated the medical opinions advising Plaintiff could not follow complex or detailed instructions or engage in complex tasks.

Moreover, the ALJ's restrictions adequately address the limitations identified by Plaintiff, as numerous courts within the Second Circuit have concluded that such limitations sufficiently account for moderate mental limitations.  *See Kristina L.H. v. Comm'r of Soc. Sec.*, No. 22-cv-605Sr, 2025 WL 959827, at *8 (W.D.N.Y. Mar. 31, 2025) (recognizing that "a moderate limitation in the ability to sustain an ordinary routine and attendance can be addressed with an RFC that limits a plaintiff to simple, routine tasks") (internal citation omitted); *Terrence S. B. v. Comm'r of Soc. Sec.*, 1:22-cv-0380, 2024 WL 4131237, at *6 (W.D.N.Y. Sept. 10, 2024) (RFC limiting plaintiff to simple, routine and repetitive tasks was sufficient to accommodate limitations in concentration, persistence, and pace); *Pichardo v. Comm'r of Soc. Sec.*, 21-cv-06873 (SDA), 2023 WL 2596970, at *18 (S.D.N.Y. Mar. 22, 2023) (RFC limiting plaintiff to simple, routine work at non-production pace sufficiently accounted for moderate concentration and pace limitations); *Hintsa N. v. Comm'r Soc. Sec.*, Case. No. 20-cv-6335-FPG, 2021 WL 3615704, at *2 (W.D.N.Y. Aug. 16, 2021) (concluding that "[t]he ALJ's RFC limiting Plaintiff to simple, routine, and repetitive tasks accounted for and incorporated Dr. Deneen's opinion—which the ALJ found persuasive—that Plaintiff would have moderate limitations in concentration,

production, and pace"); *Reeves v. Comm'r of Soc. Sec.*, 19-CV-775S, 2020 WL 4696589, at *3-4 (W.D.N.Y. Aug. 13, 2020)  (medical records and consultative opinions showing that plaintiff had intact concentration supported RFC limiting plaintiff to simple work-related tasks, work-related decisions, and changes in a routine work setting; ALJ "had substantial evidence that Plaintiff's concentration, persistence and pace did not hinder her from performing simple tasks); *Coleman v. Comm'r of Soc. Sec.*, 6:17-CV-06411 EAW, 335 F. Supp.3d 389, 401 (W.D.N.Y. 2018) (RFC limiting plaintiff to performing only work that requires ability to understand, remember, and follow simple instructions is "fully consistent" with moderate limitations in concentration, persistence, and pace). *See also Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (noting that it is "well-established that . . . moderate limitations do not prevent individuals from performing 'unskilled work'") (quoting *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010)).

Further, to the extent Plaintiff argues that the ALJ erred by not including limitations pertaining to off-task time or absenteeism, this argument fails.  To begin, while Dr. Woogen opined that Plaintiff would be moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, he did not expressly opine that Plaintiff would be off-task more than 10% of the time, or absent a certain number of days each month, as a result of her health conditions.  Plaintiff's argument, then, merely speculates that the "more limiting portions" of the opinions she identified would result in off-task time or increased absenteeism.  Such speculation cannot serve as a basis for remand.  *See Morales v. Comm'r of Soc. Sec.*, Case No. 17-cv-341-FPG, 2019 WL 1109572, at *7 (W.D.N.Y. Mar. 11, 2019) (rejecting

19

the plaintiff's unsupported argument that "'moderate' limitations in the ability to maintain attention and concentration translates into being 'off task' for some percentage during the workday.")  As it is Plaintiff's burden to prove a more restrictive RFC than that assessed by the ALJ, Plaintiff's failure to do so precludes remand.  *See Denise Marie T.-W. v. Comm'r of Soc. Sec.*, 1:22-cv-00327 (JJM), 2024 WL 4162490, at *4 (W.D.N.Y. Sept. 12, 2024).

Moreover, the ALJ expressly rejected the portion of Dr. Cicilline's opinion providing that Plaintiff would be unproductive for more than 20-25% of the time on her "bad days." (*See* Tr. 30.)  He concluded:

> While the evidence overall supports significant restrictions such as those contained in the paragraph above, the evidence of record, which includes Dr. Cicilline's treatment notes, do not support the level of functional limitations which she proffers. For example, Dr. Cicilline's opinion that the claimant's pain would negatively impact productivity 20-25% on a bad day is not supported by any objective findings or clinical signs. Though the claimant has exhibited some difficulties on examinations, none have reached such a significant level.

(*Id.*)

Thus, the ALJ clearly concluded that an off-task or absenteeism limitation was unnecessary based on the whole of the record.  This conclusion was proper.

### 2.  The ALJ properly evaluated Counselor Steron's opinion.

Additionally, Plaintiff argues that the ALJ failed to address the portions of Counselor Steron's opinion that Plaintiff would be unable to make occupational adjustments such as understanding, carrying out, and remembering instructions, responding appropriately to a supervisor or co-worker, and handling customary work pressures in a private or public work setting. (*See* Doc. 5-1 at 27.)  Plaintiff notes the ALJ did not include any social restrictions.  (*See id.* at 28.)

20

As Defendant points out, the portion of Counselor Steron's opinion addressing Plaintiff's ability to receive constructive criticism or otherwise engage in group settings does not include any meaningful functional limitations. (*See* Doc. 9-1 at 11.) There is no indication to what extent Counselor Steron opined Plaintiff to be limited in these areas. Nonetheless, the ALJ thoroughly analyzed Plaintiff's mental health limitations, including her difficulty with anxiety and difficulty being around others. (Tr. 22-23.) The ALJ concluded that Plaintiff only had a mild limitation in interacting with others, relying on the normal mental examinations reflecting adequate social skills, appropriate dress, clear sensorium, direct eye contact, fluent, intelligent speech with clear quality, normal rate and tone of voice, and adequate expressive and receptive language, with no irritability or hostility. (*See id.*) (citing Tr. 607-08, 765, 1154, 1283, 1948.) Both Dr. Woogen and Dr. Juriga also concluded that Plaintiff was only mildly limited in the area of interacting with others. (*See* Tr. 76, 94.) And Dr. Deneen found no limitations in Plaintiff's ability to interact adequately with supervisors, co-workers, and the public. (Tr. 608.) Indeed, none of these experts opined to social interaction limitations. (*See* Tr. 86, 99, 608.)

Accordingly, the Court finds no error in the ALJ's evaluation of Counselor Steron's opinion and concludes that the ALJ's mental RFC is supported by substantial evidence.

### C. The ALJ Adequately Explained his Rejection of Dr. Cicilline's Limitations.

Finally, Plaintiff maintains that the ALJ failed to explain his refusal to adopt Dr. Cicilline's opinions regarding lifting, carrying, sitting, standing, and walking. (Doc. 5-1 at 30.) While Plaintiff acknowledges that the ALJ expressly addressed his rejection of certain limitations, Plaintiff contends that his failure to address each identified restriction he rejected requires remand. (*See id.*)

21

The Court disagrees.  The ALJ carefully analyzed Dr. Cicilline's opinion, explicitly accepting certain limitations proffered by her.  (*See* Tr. 30.)  He then addressed those limitations he did not accept, concluding that:

> Dr. Cicilline's remaining opinions regarding a complete inability to work depict a level of functioning that would preclude all work. While the evidence overall supports significant restrictions such as those contained in the paragraph above, the evidence of record, which includes Dr. Cicilline's treatment notes, do not support the level of functional limitations which she proffers.

(*See id.*)

The ALJ then provided examples to support this conclusion.  While he did not identify the rejection of Dr. Cicilline's opinions regarding lifting, carrying, sitting, standing, and walking, these restrictions directly contradict the final RFC and, as the ALJ noted, are inconsistent with the record, including Dr. Cicilline's own treatment notes.  Indeed, the ALJ carefully detailed the objective medical evidence regarding Plaintiff's conditions, (*see* Tr. 25-27), which the ALJ concluded "[did] not support restrictions beyond the assessed residual functional capacity."  (*See* Tr. 25.)  Moreover, the ALJ's conclusion that Plaintiff could engage in light exertional work was supported by four other opinions, including Drs. Dantoni, Toor, Baronos, and Zito.  (*See* Tr. 29-30.)

In sum, the Court finds that ALJ Mastrangelo properly evaluated the medical opinions.  His analysis was very thorough and well detailed.  It is clear to the Court that the ALJ properly discharged his obligation by considering the whole of the record, including all opinions, and formulating an RFC specific to Plaintiff's abilities.  *See April W.*, 2024 WL 4804778, at *5 (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence")(internal citation omitted).  While Plaintiff may disagree with his conclusions, the ALJ is charged with resolving conflicting

evidence. *See Veino*, 312 F.3d at 588. The ALJ carefully detailed Plaintiff's treatment history, concluding that it limited Plaintiff to the RFC he formulated. The Court concludes that the ALJ did not err in his analysis. Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 5) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: June 22, 2026                        J. Gregory Wehrman
Rochester, New York                        HON. J. Gregory Wehrman
                                           United States Magistrate Judge